**Rickey Gene SPICER**

v.

**James A. COLLINS, et al.**

**No. Civ.A. 1:95CV1001.**

United States District Court,
E.D. Texas,
Beaumont Division.

May 14, 1998.

Rickey Gene Spicer, pro se.

## MEMORANDUM OPINION

HINES, District Judge.

Plaintiff Rickey Gene Spicer, an inmate confined at the Stiles Unit of the Texas Department of Criminal Justice, Institutional Division (TDCJ–ID), proceeding *pro se* and *in forma pauperis*, brought this civil rights complaint against James A. Collins, Jimmy E. Alford, Leland Heuszel, Melton Brock, Jimmy Rollo, James McCormick, Roy Brown, Jeffrey Murray, Raymond Watkins, Eric Walker, Christopher Ivins, Kelley Waller, John Gearheart, Richard Gunnels, Jeffrey Taylor, Calvin Tucker, Ernest Lott, R. Mills, Shana Carroll, Kent Ramsey, and Richard Pustka. Defendant Collins is the former director of TDCJ. Defendant Ramsey is the Regional Director of TDCJ–ID. Defendants Alford, Heuszel, Brock, and Pustka are either former or current wardens of the Eastham Unit. The remaining defendants are employed as correctional officers at the Eastham Unit.

Pursuant to 28 U.S.C. § 636(c), the plaintiff has consented to proceed before the undersigned United States Magistrate Judge.

### Development of the Factual Basis of the Complaint

Plaintiff filed his original complaint on November 6, 1995 and an amended complaint on July 21, 1997. Upon initial examination, the court was unable to determine whether plaintiff's claims have merit. Accordingly, plaintiff was ordered to file amended pleadings in the form of responses to questionnaires in order to provide a more detailed factual discussion of his claims. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir.1986); *Watson v. Ault*, 525 F.2d 886 (5th Cir.1976). Additionally, on July 15, 1997, the undersigned conducted an evidentiary hearing during which plaintiff testified. *See Spears v. McCotter*, 766 F.2d 179 (5th Cir.1985). In preparing this Memo-

randum Opinion, the undersigned considered plaintiff's original and amended complaints, his amended pleadings, and the testimony at the evidentiary hearing.

### Factual Background

On May 22, 1994, plaintiff alleges defendants Murray and Walker conspired to refuse plaintiff permission to leave his cell to go to the pill window. Plaintiff alleges he was on cell restriction and commissary restriction at the time and was, therefore, only allowed out of his cell to get his evening medication. Plaintiff alleges he was taking 25 mg. of Elavil for neck and back pain. Plaintiff did not receive his medication until the next day. As a result of the delay, plaintiff alleges he endured severe mental suffering. Plaintiff claims he filed grievances against defendants Murray and Walker that same day.

On October 20, 1994, defendant Murray allegedly threatened to assault plaintiff. Plaintiff contends he was threatened because he had filed a grievance against defendant Murray. Plaintiff alleges defendants Ivins and Walker were present while defendant Murray threatened plaintiff.

On November 7, 1994, plaintiff was rolling a cigarette while waiting for another inmate. Plaintiff had placed his package of tobacco on the inside entrance bars of the H–Line door. As plaintiff reached for the package, it fell to the ground. Plaintiff claims that when the tobacco fell, defendant Murray ran over to the plaintiff and said he would write plaintiff a disciplinary case for "Trafficking and Trading" as a payback. Plaintiff alleges the disciplinary charges were never pursued, but plaintiff's tobacco was confiscated in violation of TDCJ policy. Defendant alleges he brought this incident to the attention of defendant Brown on November 10, 1994. Defendant Brown allegedly told plaintiff that he thought the plaintiff was lying and that the plaintiff was always lying and complaining. Plaintiff also alleges defendant Brown told plaintiff that if he was unable to speak or breathe, defendant Brown would not have to listen to plaintiff's problems.

Plaintiff alleges he was taking medication which expired on November 21, 1994. Plaintiff alleges the medical staff issued plaintiff a pass to go to the pill window and placed an orange sticker on the back of plaintiff's identification card so he would be able to go to the pill window to pick up the medication. When plaintiff returned to his housing area, he alleges defendant Murray told defendant Watkins to take plaintiff's identification card because plaintiff could not have gone to the pill window and returned so quickly. Defendant Watkins took plaintiff's card and gave it to defendant Murray. Defendant Murray allegedly called the infirmary pill window to ask about plaintiff's medication. Plaintiff alleges the nurse told defendant Murray that plaintiff's prescription had expired, but plaintiff had been given an extension on the medication. Defendant Watkins told plaintiff to walk over and get his identification card. When he refused to comply with the order, defendant Watkins threatened to slam plaintiff to the ground.

At defendant Murray's urging, defendant Watkins filed disciplinary charges against plaintiff for lying to an officer, possessing contraband, and creating a disturbance. Plaintiff was found guilty of the disciplinary offenses and was punished with fifteen days of commissary restriction.

Plaintiff alleges he was harassed and threatened by defendants Murray, Watkins, Ivins, Waller, Gearheart, and by Jason Jeffus on December 24, 1994. Plaintiff alleges defendants Rollo and McCormick ordered the officers to harass inmates who file grievances, including the plaintiff.

When plaintiff returned to his housing area after recreation on January 28, 1995, he saw defendant Murray standing near Officer Jeffus. Plaintiff claims defendant Murray told Officer Jeffus that plaintiff was a writ writer and Officer Jeffus replied that "those grievances burn just like a house will burn." Plaintiff alleges he filed a grievance about this incident because he feared for his safety.

On January 30, 1995, defendants Murray, Waller, and Gearheart were standing in front of the pill window when plaintiff arrived to pick up his medication. Plaintiff alleges the defendants ordered plaintiff to stop and defendant Murray ordered plaintiff to stand facing the wall. Plaintiff alleges defendant

Murray claimed plaintiff had threatened him and defendants Waller and Gearheart were witnesses to the threats.

Plaintiff alleges he filed a grievance with defendant Alford on April 15, 1995 about the threats he had received from defendants Murray, Walker, Gearheart, Waller, Watkins, and Ivins. Plaintiff also alleges he had a "warden interview" with defendants Brock and Pace. Plaintiff alleges he told defendants Brock about the officers threatening plaintiff and writing false disciplinary cases in retaliation against plaintiff for filing grievances. Plaintiff alleges defendants Brock and Pace said they would investigate the situation.

On May 12, 1995, plaintiff alleges he told a psychologist about the grievances he had written against various officers. Plaintiff alleges the psychologist called Internal Affairs. When plaintiff wrote a sick call request on June 30, 1995 to see the psychologist, he was told that she was no longer assigned to the unit.

In August of 1995, plaintiff spoke with Lieutenant Joseph Henderson from Internal Affairs about the threats made by officers. Plaintiff was told that Henderson would return soon to speak again with plaintiff.

Plaintiff claims defendants Gunnels and Taylor started a vigilante organization sometime before February 4, 1995 to discipline African American inmates for disciplinary violations by beating them. Plaintiff alleges he violated a rule against masturbating in public on February 25, 1995. According to the plaintiff, defendants Taylor and Gunnels authorized Officers Davis Murray, Jason Chaves, Joe Bennett, and Robert Duhon to assault plaintiff. However, plaintiff was never beaten by these officers.

Defendant Gunnels allegedly told plaintiff that an officer on first or second shift would prosecute plaintiff sooner or later and that plaintiff was like all of the other lying black inmates.

On August 18, 1995, plaintiff alleges defendant Murray threatened to beat plaintiff if he ever masturbated in front of officers Georgia Murray and Sada McFarland.

Plaintiff alleges he tried to tell defendant Brock about the threats on August 23, 1995 while they were in the hallway. Plaintiff alleges defendant Brock did not hear what plaintiff was saying because he was too busy, but defendant Brock allegedly told plaintiff to speak with defendant Pace.

Although plaintiff contends he was threatened on a number of occasions, he admits he was never physically harmed by any of the defendants.

Plaintiff alleges defendants Alford and Collins failed to take any action to protect the plaintiff.

Plaintiff alleges the defendants actions were all taken in retaliation because plaintiff had filed a civil rights action against Major John Sharp, Major A.R. Massingill, Chief of Classification Charles Frizzels, Assistant Warden J.N. Barratt, and Senior Warden C.R. Martin. Plaintiff alleges Major Sharp and Major Massingill had told the defendants about the previous lawsuit. Plaintiff also claims he had filed grievances against each of the named defendants before filing this lawsuit.

On July 21, 1997, plaintiff amended his complaint asserting claims entirely unrelated to those raised in his original complaint. The amended complaint involved alleged constitutional violations that occurred in 1996 and 1997.

On October 19, 1996, plaintiff attempted to speak with Sergeant Maczeal while he was in the dining hall for breakfast. As plaintiff began to walk towards Sergeant Maczeal, defendant Lott allegedly grabbed plaintiff by the arm and asked him where he was going. Plaintiff replied that he was going to speak with Sergeant Maczeal. Defendant Carroll allegedly told defendant Lott that he should handcuff plaintiff and "slam" him. Defendants Carroll and Lott later handcuffed plaintiff and escorted him from the dining hall. Plaintiff alleges defendant Lott used excessive force against him by grabbing his arm. Plaintiff further alleges defendants Lott and Carroll used excessive force by handcuffing plaintiff too tightly and lifting up plaintiff's hands causing pain in his neck, arms, and hands. Plaintiff complains that he was not taken to the infirmary for a "Use of

Force" exam as required by TDCJ–ID policy.

On October 24, 1996, defendant Carroll allegedly retaliated against plaintiff by making a derogatory comment to defendant Lott about plaintiff.

On November 2, 1996, defendant Lott allegedly woke plaintiff up at 1:56 a.m. by hitting a food tray against his cell door. A short time later, defendant Lott allegedly said to plaintiff, "What are you doing masturbating again? I'll deal with you later." Plaintiff alleges these actions were retaliatory. In support of the retaliation claim, plaintiff contends defendant Lott filed disciplinary charges against him that were later dismissed.

Sergeant Maczeal came to plaintiff's cell later that day and told plaintiff to get dressed and go with him. Plaintiff alleges that several correctional officers were standing nearby so they could beat him up if plaintiff gave them a reason.

On November 26, 1996, defendant Lott searched plaintiff as he was going to the dining hall. Defendant Lott allegedly ordered plaintiff to return to his cell upon an order from defendant Tucker. As a result, plaintiff missed breakfast that morning. Plaintiff complains that he was forced to work without eating breakfast and he had to take his medication on an empty stomach. Defendant Lott filed disciplinary charges against plaintiff arising out of this incident. Plaintiff was found guilty of "failing to properly dress before turning out for chow" and sanctioned with fifteen days of commissary restriction. Plaintiff was also charged with creating a disturbance, but that charge was dismissed.

On July 9, 1997, plaintiff returned to his housing area after going to the dining hall and pill window. Defendant Tucker ordered plaintiff to go to his cell. However, plaintiff alleges he was unable to get in his cell because the picket officer had already closed the cell doors. Defendant Tucker then allegedly ordered defendant Mills to write plaintiff a disciplinary case for being out of place and refusing to obey an order. Plaintiff alleges he was found guilty of the charges

and sanctioned with ten days of cell and commissary restriction. Plaintiff appealed the disciplinary conviction through the inmate grievance procedure, but his appeals were denied by defendants Ramsey and Pustka.

### Standard of Review

A prisoner complaint brought against a government officer, employee, or entity shall be dismissed pursuant to 28 U.S.C. § 1915A(b) if: (1) it is frivolous, malicious, or fails to state a claim upon which relief may be granted or (2) it seeks monetary relief from a defendant who is immune from such relief.

The Supreme Court has considered when a complaint is frivolous. In *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), the Supreme Court held "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or fact." The Court went on to say that a claim is legally frivolous under Section 1915 when it is based on "an indisputably meritless legal theory." *Id.* at 327, 109 S.Ct. 1827.

A complaint may be dismissed for failure to state a claim if it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering whether to dismiss a complaint for failing to state a claim upon which relief may be granted, all factual allegations in the complaint must be taken as true and construed favorably to the plaintiff. *Fernandez–Montes v. Allied Pilots Assoc.*, 987 F.2d 278 (5th Cir. 1993).

### Analysis

*Elements of a Title 42 U.S.C. § 1983 Cause of Action*

42 U.S.C. § 1983 creates a cause of action against any person who, under color of state law, causes another to be deprived of a federally protected constitutional right. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom· or usage, of any state … subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured....

42 U.S.C. § 1983.

Section 1983 was promulgated to prevent a government official's "misuse of power, possessed by virtue of state law and made possible only because the [official] is clothed with the authority of state law." *Johnston v. Lucas,* 786 F.2d 1254, 1257 (5th Cir.1986). *See also Whitley, v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986). However,· Section 1983 does not create a federal claim for every action taken by a state official. *Whitley,* 106 S.Ct. at 1084.

In order to state a cause of action under Section 1983, a plaintiff must allege two elements. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

*Medical Claims*

Plaintiff alleges defendants Murray and Walker were deliberately indifferent to his medical needs when they denied his request to go to the pill window for his evening medication.

A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). An Eighth Amendment claim consists of two components—one objective and one subjective. *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). Under the objective requirement, the deprivation must be so serious as to "deprive prisoners of the minimal civilized measures of life's necessities," as when it denies the prisoner some basic human need. *Wilson v. Seiter,* 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Under the subjective requirement, the court looks to the state of mind of the defendant. Deliberate indifference on the part of prison officials will suffice to meet this requirement. *Id.*

The United States Supreme Court has adopted "subjective recklessness as used in the criminal law" as the appropriate definition of deliberate indifference under the Eighth Amendment. *Farmer,* 114 S.Ct. at 1980. Under this definition, a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the risk. *Id.; Reeves v. Collins,* 27 F.3d 174 (5th Cir.1994).

Mere negligence, neglect, or medical malpractice do not constitute deliberate indifference. *Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir.1979). "Further, delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir.1993).

Plaintiff alleges he was denied one dose of the medication he was taking for neck and back pain due to the actions of defendants Murray and Walker. Plaintiff did not receive his medication until the next day and, in the meantime, he endured severe mental suffering.

Assuming that neck and back pain is a serious medical need, plaintiff has failed to show defendants Murray and Walker were deliberately indifferent to his medical needs.

Plaintiff does not allege any facts demonstrating either defendant was aware of his medical condition. Plaintiff states the defendants refused to grant plaintiff permission to leave his cell while he was on cell restriction, but he does not say that he specifically asked for permission to go to the pill window or that he explained his medical condition to either defendant.

Further, plaintiff was not denied his medication altogether. He received his medication the next day. Plaintiff contends he suffered mental distress as a result of the delay, but he does not allege any physical harm caused by the delay in treatment.

Plaintiff has not alleged facts demonstrating the defendants were aware of, and disregarded a substantial risk of harm to the plaintiff. Nor did he suffer substantial harm as a result of the delay in treatment. Therefore, this claim should be dismissed as frivolous and for failure to state a claim upon which relief may be granted.

*Verbal Threats*

 Plaintiff alleges he was threatened, harassed, and insulted by various defendants from October 20, 1994 until October 19, 1996. However, verbal threats and insults do not amount to a constitutional violation. *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir.1983); *Gaut v. Sunn,* 810 F.2d 923, 925 (9th Cir.1987) (threatening language because a prisoner exercises his right of access to court does not amount to a constitutional violation). In order for a person to allege a cognizable constitutional violation based upon language, the language must be accompanied by a "wanton act of cruelty which, if it occurred, was brutal." *Burton v. Livingston,* 791 F.2d 97, 100 (8th Cir.1986) (Prison guard pointing a pistol at an inmate and saying "nigger run so I can blow your goddamn brains out, I want you to run so I can be justified" could amount to a constitutional violation).

Plaintiff does not allege the threats and insults were accompanied by any wanton acts of cruelty. On the contrary, plaintiff admits he has never been physically harmed by any of the defendants. Since verbal threats alone do not constitute a constitutional violation, these claims should be dismissed.

*Failure to Protect*

 In connection with his claims of verbal threats, plaintiff further contends he has notified various prison officials of the threats and abusive language, but they have failed to take action to protect plaintiff.

 As discussed above, a prison official's deliberate indifference to a substantial risk of serious harm to an inmate constitutes cruel and unusual punishment as prohibited by the Eighth Amendment to the United States Constitution. *See Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. When considering a claim regarding prison conditions, the court must consider "whether society considers the risk ... to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

 To establish a failure to protect claim, a "prisoner must prove both that he is incarcerated under conditions posing a substantial risk of serious harm and that the prison officials were deliberately indifferent to his need for protection." *Horton v. Cockrell,* 70 F.3d 397, 401 (5th Cir.1995), citing *Farmer,* 114 S.Ct. at 1977. To act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer,* 114 S.Ct. at 1979. A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 1984.

Plaintiff has failed to show prison officials were aware of, and disregarded, a substantial risk of harm to the plaintiff. On several occasions, plaintiff spoke with prison officials and filed grievances regarding the threats and insults. Plaintiff was interviewed by

defendants Brock and Pace as a result of his complaints. They said they would investigate the matter. An officer from the Internal Affairs Division also came to the Unit to speak with plaintiff about the alleged threats. Plaintiff complains that the defendants did not take action to protect him from the correctional officers who threatened him. However, there is no indication the threats were of such a magnitude that they constituted a substantial risk of harm to the plaintiff. As discussed above, threats alone do not rise to the level of a constitutional violation. In this case, plaintiff admits he was never harmed in connection with any of the threats. Plaintiff has failed to show prison officials were deliberately indifferent to his health or safety.

*Deprivation of Property*

■■■ Plaintiff alleges his tobacco was confiscated in violation of prison policy on November 7, 1994. A deprivation of property claim is cognizable in Section 1983 litigation under the Due Process Clause of the Fourteenth Amendment. However, where the deprivation was random and unauthorized and the state has provided an adequate post-deprivation tort remedy, due process is satisfied. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (holding that the due process clause is not violated when a state employee intentionally deprives an individual of property where the state has a meaningful postdeprivation remedy); *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (finding no due process violation when a state employee negligently deprives an individual of property if the state provides a postdeprivation remedy), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also Murphy v. Collins*, 26 F.3d 541, 543–44 (5th Cir.1994) (noting that deprivations of property caused by the misconduct of state officials do not violate constitutional due process, provided adequate state post-deprivation remedies exist).

■■■ Postdeprivation remedies are not sufficient to satisfy due process where the deprivation of property is caused by conduct pursuant to established policy. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

However, where the loss of property is the result of a random and unauthorized act:

> It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under "color of law," is in almost all cases beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation.

*Parratt*, 451 U.S. at 541–42, 101 S.Ct. 1908. Therefore, deprivation of property caused by a random and unauthorized act, regardless of whether the act was intentional or negligent, does not constitute a due process violation as long as the state has a meaningful postdeprivation remedy. *Hudson*, 468 U.S. at 533, 104 S.Ct. 3194.

Plaintiff does not allege his tobacco was confiscated in accordance with prison policy. To the contrary, plaintiff claims defendant Murray violated prison procedures when he confiscated plaintiff's tobacco. Therefore, plaintiff's due process rights were not violated as long as Texas provides an adequate postdeprivation remedy.

In Texas, an inmate incarcerated in the Texas Department of Criminal Justice, Institutional Division, has an adequate postdeprivation tort remedy for property taken from them by prison personnel. Pursuant to Texas Government Code § 501.007 (Vernon 1991), an inmate may be reimbursed for up to $500 on an inmate's claim of lost or damaged property. *See also Murphy*, 26 F.3d at 543–44 (holding that, in Texas, the tort of conversion is an adequate post-deprivation remedy); *Thompson v. Steele*, 709 F.2d 381, 383 (5th Cir.1983) (holding that n state action for damages is an adequate remedy), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983). Thus, plaintiff has failed to state a procedural due process claim.

*Disciplinary Proceedings*

■■■ Plaintiff complains that he was denied due process during disciplinary proceedings in connection with charges filed against him on November 21, 1994, November 26, 1996, and July 9, 1997.

■ Prisoners charged with rule violations are entitled to certain due process rights under the Fourteenth Amendment when the disciplinary action may result in a sanction that will impose upon a liberty interest. Prior to *Sandin v. Conner*, courts examined state laws to determine whether a protected liberty interest was created by mandatory language in the statute. *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

In *Sandin*, the Supreme Court disapproved of previous cases which "shift[ed] the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the deprivation." *Sandin*, 115 S.Ct. at 2299. The Court concluded that such an inquiry "encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id.* The states may create liberty interests which are protected by the Due Process Clause. However, the Supreme Court held in *Sandin* that a prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 2295 (citations omitted).

■ As a general rule, only sanctions which result in loss of good conduct time credits for inmates who are eligible for release on mandatory supervision or which otherwise directly and adversely affect release on mandatory supervision will impose upon a liberty interest. *See Orellana v. Kyle*, 65 F.3d 29, 31–33 (5th Cir.1995), *cert. denied*, 516 U.S. 1059, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996) ("Although *Sandin* cites with approval cases in which it was held that state law could create a constitutional liberty interest in good-time credits, or release on parole, it is difficult to see that any other deprivations in the prison context ... will henceforth qualify for constitutional 'liberty' status.") (citations omitted); *see also Madison v. Parker*, 104 F.3d 765 (5th Cir.1997) (concluding that forfeiture of good conduct time credits

earned by a prisoner who is not eligible for release on mandatory supervision does not implicate a liberty interest). Commissary and cell restrictions imposed as punishment for disciplinary infractions are mere changes in the condition of a prisoner's confinement and do not implicate due process concerns. *Madison*, 104 F.3d at 768.

Plaintiff raises due process claims arising from three separate disciplinary proceedings. Plaintiff was punished with fifteen days of commissary restriction for each of the first two disciplinary convictions. Plaintiff was placed on cell and commissary restriction for ten days as a result of the last disciplinary conviction. Cell and commissary restrictions do not impose a significant or atypical hardship on the inmate in relation to the ordinary incidents of prison life. These sanctions did not deprive plaintiff of a protected liberty interest and, therefore, plaintiff was not entitled to due process during the disciplinary proceedings.

*Malicious Prosecution*

■ Plaintiff also complains that the disciplinary charges brought against him were false. The court construes this allegation as a malicious prosecution claim. However, it is unclear whether a claim of malicious prosecution is actionable under 42 U.S.C. § 1983. *See Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (The Supreme Court held that a malicious prosecution claim is not actionable as a violation of substantive due process, but expressed no opinion whether such a claim may be brought under the Fourth Amendment). Assuming malicious prosecution is actionable under Section 1983 and, further, assuming that such a claim may be raised in the context of institutional disciplinary proceedings, plaintiff must prove seven elements to prevail. The seven elements of a malicious prosecution claim are: (1) a criminal action was commenced against the plaintiff; (2) the prosecution was caused by the defendant or with her consent; (3) the action terminated in the plaintiff's favor; (4) the plaintiff was innocent; (5) the defendant acted without probable cause; (6) the defendant acted with malice; and (7) the criminal proceeding damaged the plaintiff. *Pete v. Metcalfe*, 8 F.3d

214 (5th Cir.1993); *Brown v. United States,* 653 F.2d 196 (5th Cir.1981), *cert. denied,* 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982).

Plaintiff complains of three separate disciplinary proceedings. He was found guilty in each of the three proceedings. Plaintiff does not allege the disciplinary convictions were reversed on appeal through the inmate grievance procedure. Therefore, plaintiff has not shown the actions terminated in his favor. Plaintiff's claims regarding his disciplinary convictions are frivolous and do not state a claim upon which relief may be granted.

*Retaliation Claims*

■ Plaintiff contends that most of the defendants' actions were motivated by retaliation. A prison official may not retaliate against an inmate because the inmate exercised a constitutional right. *See Gartrell v. Gaylor,* 981 F.2d 254 (5th Cir.1993); *Gibbs v. King,* 779 F.2d 1040 (5th Cir.), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986). "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Woods v. Smith,* 60 F.3d 1161, 1165 (5th Cir.1995), *cert. denied, Palermo v. Woods,* 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ To establish a retaliation claim, an inmate must demonstrate that, but for the retaliatory motive, the incident complained of would not have occurred. *Woods,* 60 F.3d at 1166. Conclusory allegations are insufficient to withstand a summary judgment challenge. *Id.* In order to survive a motion for summary judgment, the inmate must either produce direct evidence of motivation or allege a chronology of events from which retaliation may be plausibly inferred. *Id.*

Plaintiff has raised a number of instances of alleged retaliation. He claims that nearly every action allegedly taken by the defendants was motivated by a desire to retaliate against him. Plaintiff has twice been ordered to submit amended pleadings in the form of responses to a questionnaire. In both orders, plaintiff was asked to provide facts in support of his retaliation claims. However, despite being provided two opportunities to support his conclusory allegations of retaliation, plaintiff has failed to either show direct evidence of motivation or allege a chronology of events from which retaliation may be inferred. Therefore, his retaliation claims must also be dismissed.

*Excessive Force*

■ Plaintiff alleges defendant Lott used excessive force against him by grabbing his arm. Plaintiff also contends defendants Lott and Carroll used excessive force by handcuffing plaintiff too tightly and raising his hands in the air.

■ In addressing an excessive use of force claim brought under Section 1983, analysis begins by identifying the specific constitutional right allegedly infringed upon by the challenged application of force. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The claim of a convicted prisoner is judged against the Eighth Amendment "cruel and unusual punishment" standard set out in *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). "Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 6–7, 112 S.Ct. 995 (*quoting Whitley v. Albers,* 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

■ However, not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson,* 503 U.S. at 9, 112 S.Ct. 995, *citing Johnson v. Glick,* 481 F.2d 1028 (2d Cir.1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). The Eighth Amendment prohibition against cruel

and unusual punishment "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson,* 503 U.S. at 9, 112 S.Ct. 995, *quoting Whitley,* 475 U.S. at 327, 106 S.Ct. 1078; *See Jackson v. Culbertson,* 984 F.2d 699, 700 (5th Cir.1993) (spraying inmate with a fire extinguisher after the fire was out was a de minimis use of physical force and was not repugnant to the conscience of mankind where the inmate suffered no physical injury).

In addition to establishing that force was applied maliciously and sadistically to cause harm, a plaintiff must show that he suffered some injury in order to prevail on an Eighth Amendment excessive force claim. *Eason v. Holt,* 73 F.3d 600, 601–2 (5th Cir. 1996); *Rankin v. Klevenhagen,* 5 F.3d 103, 108 (5th Cir.1993). While the "some injury" standard is not clearly defined, the United States Court of Appeals for the Fifth Circuit recently held that the standard was not met where an inmate suffered bruises which lasted for three days. *Siglar v. Hightower,* 112 F.3d 191 (1997).

In *Siglar v. Hightower,* a correctional officer twisted Siglar's arm behind his back and twisted his ear. *Id.* at 193. Other officers were also present during this incident, but failed to intervene. *Id.* Siglar's ear was sore and bruised for three days as a result of the incident. *Id.* The Fifth Circuit concluded that this injury was de minimis and that, therefore, Siglar failed to state an Eighth Amendment claim. *Id.*

Plaintiff does not allege he suffered any physical injury when defendant Lott grabbed plaintiff's arm. Plaintiff contends he suffered pain in his neck, arms, and hands from the handcuffing incident. In light of *Siglar,* plaintiff has failed to satisfy the "some injury" standard because his injuries were, at most, de minimis. Additionally, the force used in these incidents is not the sort of force that is "repugnant to the conscience of mankind." As a result, plaintiff has failed to state an Eighth Amendment claim of excessive force.

Plaintiff also claims defendants Carroll and Lott violated prison policy by failing to take him to the infirmary for a "Use of Force" physical. However, an assertion that prison officials failed to follow departmental regulations must, on its own merit, state a constitutional claim. *See Balli v. Haynes,* 804 F.2d 306, 308 (5th Cir.1986). Here, plaintiff does not allege he was injured and required treatment. He merely alleges the defendants failed to follow prison policies. Such a claim is not actionable under Section 1983.

*Missed Meal*

Plaintiff complains that he missed breakfast on November 26, 1995. States are required to furnish prisoners with reasonably adequate food. *Newman v. Alabama,* 559 F.2d 283, 291 (5th Cir.1977). The meals must be well balanced and contain nutritional value to preserve health. *Smith v. Sullivan,* 553 F.2d 373, 380 (5th Cir.1977). The prison system is not, however, required to provide inmates with three meals a day. *Green v. Ferrell,* 801 F.2d 765, 770 (5th Cir. 1986).

In this case, plaintiff missed one meal. Plaintiff does not allege the other two meals he received that day were nutritionally inadequate. When asked how he was harmed by missing the meal, plaintiff stated that he was required to work and take his medicine on an empty stomach that morning. However, plaintiff does not allege he suffered any harm from working or taking his medicine on an empty stomach. There is no indication that plaintiff was exposed to a substantial risk of harm by missing one meal, or that the defendants were aware of any risk of harm to the plaintiff. As a result, plaintiff's claim that he was subjected to cruel and unusual punishment by missing breakfast lacks an arguable basis in fact or law and should be dismissed.

*Conclusion*

For the reasons set forth above, this action will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim upon which relief may be grant-

ed. A final judgment shall be entered in accordance with this Memorandum Opinion.