United States Court of Appeals,

Fifth Circuit.

No. 96-40240.

Nesbitt Edwin MADISON, Plaintiff-Appellant,

v.

Lt. R. PARKER, et al., Defendants-Appellees.

Jan. 31, 1997.

Appeal from the United States District Court for the Eastern District of Texas.

Before REYNALDO G. GARZA, JONES and DeMOSS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Nesbitt Edwin Madison, an inmate currently confined in the Texas Department of Criminal Justice, Institutional Division, filed a civil rights suit under 42 U.S.C. § 1983 alleging violations of his constitutional rights during his confinement in the state penitentiary. A hearing was held by Magistrate Judge Judith K. Guthrie of the Eastern District of Texas after which she held, *inter alia,* that a prisoner has no liberty interest in his good conduct credit time and dismissed Madison's claim. Upon reviewing the facts in the record along with the laws of Texas we vacate the lower court's decision and remand for further proceedings in accordance with this opinion.

BACKGROUND

Madison is incarcerated at the Beto I Unit in Tennessee Colony, Texas. On May 18, 1995, Madison was in his prison cell when his cellmate, Garcia, was severely injured. A security officer on duty that evening, Officer Goodwin, was conducting a

security check when he saw Garcia standing by the bars with blood on his face and clothes. Goodwin called for Lieutenant R. Parker, a correctional officer at the Beto I Unit. When Parker arrived at the scene he was told by both inmates that Garcia had fallen out of his bunk. Despite Garcia's and Madison's statements, Lt. Parker concluded that the numerous facial injuries sustained by Garcia indicated that he had been assaulted. Madison was removed from the cell and placed in prehearing detention.

A disciplinary hearing was held on May 23, 1995. Parker testified that, although he did not witness the alleged fight, Madison continually tried to assault Garcia after he arrived. Madison tried to rebut Parker's testimony by attempting to introduce his medical records of that evening to show that he had not been injured. He also tried to introduce a witness statement from Officer Goodwin stating that Garcia had told him that he had injured himself by falling from his bunkbed. However, Captain Emerson, the officer presiding over the hearings, denied both of these requests. Madison was ultimately found guilty and punished to 30 days of commissary restriction, 30 days of cell restriction, and 30 days loss of good time already accumulated.

Madison filed suit contending his civil rights were violated under 42 U.S.C. § 1983 and requested, as relief, that the disciplinary case be expunged from his record and that he be awarded $8,000 from Lt. Parker and $3,000 from Capt. Emerson. Madison and the defendants consented to have this case heard by a magistrate judge. A hearing in accordance with *Spears v. McCotter,*

2

766 F.2d 179 (5th Cir.1985), was held on February 20, 1996. Upon reviewing the case, the lower court dismissed Madison's complaint as frivolous on the grounds that the punishment Madison received was not sufficient to trigger due process.

DISCUSSION

I. Standard of Review

We review a judgment rendered by a magistrate judge just as we do a judgment rendered by a district judge. 28 U.S.C. § 636(c)(3). The identification of the liberty interests that are protected by the Due Process Clause is a question of federal constitutional law that we review *de novo. See Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978).

II. Due Process

Madison complains that he was denied due process at his disciplinary hearing in that he was refused the opportunity to present witnesses and offer documentary evidence. In evaluating Madison's claim, we must first address the issue of whether the Due Process Clause of the Fourteenth Amendment applies to this situation.

Although lawful incarceration brings about the necessary withdrawal of many privileges and rights, prisoners do not shed all their rights at the prison gate. In fact, the Supreme Court has recently reiterated and clarified which rights receive constitutional protection in *Sandin v. Conner,* --- U.S. ----, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The Court continued to follow

its prior decision in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in holding that states may, under certain circumstances, create liberty interests which are protected by the Due Process Clause. However, it held that these interests are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner. In coming to this conclusion, the Court first laid down the principle that the Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner. *Id.* at ----, 115 S.Ct. at 2297 (*citing Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976)).

We agree that Madison's 30 day commissary and cell restrictions as punishment are in fact merely changes in the conditions of his confinement and do not implicate due process concerns. They are penalties which do not represent the type of atypical, significant deprivation in which a state might create a liberty interest. However, his loss of 30 days good time credit calls for a more careful analysis.

The Constitution does not guarantee good time credit for satisfactory behavior while in prison. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). However, some states create such a right. When a state creates a right to good time credit and recognizes that its revocation is an authorized sanction for misconduct, a prisoner's interest therein is embraced within the Fourteenth Amendment "liberty" concerns so

4

as to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that this state-created right is not arbitrarily abrogated. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). In Texas, a prisoner may be awarded good conduct time based on his or her specific behavior in various vocations. TEX.GOV.CODE ANN. § 498.003(a) (Vernon 1996). If an inmate commits an offense or violates an institutional rule during the course of his confinement, the Director of the Texas Department of Criminal Justice—Institutional Division ("TDCJ-ID") is empowered to forfeit all or any part of the inmate's accrued good time. TEX.GOV.CODE ANN. § 498.004(a) (Vernon 1996). Once an inmate acquires good time, the only way it can be revoked is if he or she commits an offense or violates an institutional rule. The question here is whether Texas has created a liberty interest in disseminating good conduct credit, thereby invoking the due process requirements under the Fourteenth Amendment.

There are two ways in which a prisoner becomes eligible for release under Texas law. The first is by parole and the second is under a mandatory supervised release program. "Parole" means the discretionary and conditional release of an eligible prisoner sentenced to the institutional division so that the prisoner may serve the remainder of his sentence under the supervision and control of the pardons and paroles division. TEX.CODE CRIM.P.ANN. art. 42.18 § 2(1) (Vernon 1996). "Mandatory supervision" means the release of an eligible prisoner sentenced to the institutional

division so that the prisoner may serve the remainder of his sentence not on parole, but under the supervision and control of the pardons and paroles division. Tex.Code Crim.P.Ann. art. 42.18 § 2(2) (Vernon 1996).

In Texas, it is entirely speculative whether an inmate will actually obtain parole, inasmuch as there is no right to be released on parole. Tex.Code Crim.P.Ann. art. 42.18 § 8(a) (Vernon 1996); *Allison v. Kyle,* 66 F.3d 71 (5th Cir.1995). In fact, we have expressly held that there is no constitutional expectancy of parole in Texas. *Creel v. Keene,* 928 F.2d 707 (5th Cir.1991). However, we have not yet addressed the issue of whether there is a constitutional expectancy of early release under mandatory supervision when an inmate has acquired good time credits.

Texas Code of Criminal Procedure article 42.18 § 8(c) provides that "a prisoner who is not on parole *shall be* released to mandatory supervision" when his calender time plus his accrued good-conduct time equals the maximum term to which he was sentenced. Furthermore, "a prisoner released to mandatory supervision shall, upon release, be deemed as if released on parole." Tex.Code Crim.P.Ann. art. 42.18 § 8(c) (Vernon 1996). According to the Supreme Court in *Wolff,* a Nebraska statutory provision that bestowed mandatory sentence reductions for good behavior created a liberty interest for prisoners. This interest in a shortened prison sentence resulted from good time credits, credits which were revocable only if the prisoner was guilty of serious misconduct. *Wolff,* 418 U.S. at 557, 94 S.Ct. at 2975.

6

Texas law parallels the Nebraska law interpreted by the Court in *Wolff* in two ways. First, both states have statutes which bestow mandatory sentence reductions for good behavior. Second, both states have statutes which allow for a revocation of good conduct credit for misbehavior. However, we note that under the Texas statute, certain inmates are not eligible for release to mandatory supervision. A prisoner is not eligible for release to mandatory supervision if he has been convicted of certain crimes listed under art. 42.18 § 8(c).

The lower court relies heavily on *Sandin* in its decision. In *Sandin,* a Hawaii prison inmate was charged with "high misconduct" for using physical interference to impair a correctional function, and "low moderate misconduct" for using abusive or obscene language and harassing employees. He appeared before an adjustment committee at a disciplinary hearing, but was not permitted to call witnesses. He was convicted of the charges and sentenced to 30 days of disciplinary segregation on the high misconduct charge and four hours of segregation for each of the other two charges. In its decision, the Court re-evaluated the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause and determined, as it did in *Meachum,* that the punishment received did not trigger the Fourteenth Amendment.

*Wolff* is distinguishable from *Sandin* in one very important facet. In *Wolff,* the Court based its analysis on the freedom from restraint, while in *Sandin* it grounds its opinion on the type of

7

restraint. It is a matter of kind rather than degree. Furthermore, the Court in *Sandin* clearly left intact its holding in *Wolff,* namely, that the loss of good time credits under a state statute that bestowed mandatory sentence reductions for good behavior must be accompanied by certain procedural safeguards in order to satisfy due process. In *Murphy v. Collins,* 26 F.3d 541, 543 n. 5 (5th Cir.1994), we noted in dictum that such punishment (loss of good time credit as the result of a disciplinary charge) would trigger the higher standard of due process enunciated in *Wolff.*

Unfortunately, the record lacks significant information as to whether Madison was eligible for mandatory supervised release. Therefore, we cannot determine whether he was entitled to due process until sufficient facts have been revealed. Accordingly, we vacate the judgment of the district court and remand this case for further proceedings. In the event the lower court finds that Madison is not eligible for mandatory release under 42.18 § 8(c), the dismissal of Madison's complaint may be reinstated. In the event the lower court finds that Madison is eligible for mandatory release, the lower court should call for briefing from both the State and Madison as to (1) whether the statutes regarding mandatory release create a liberty interest requiring a higher level of due process; and if so, (2) whether the disciplinary hearing in this case satisfied the higher levels of due process contemplated by the Supreme Court in *Wolff.*

VACATED and REMANDED.

8