**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-40388

DOBBER GRAHAM MALCHI,

Petitioner-Appellee,

VERSUS

RICK THALER, Warden,
Texas Department of Criminal Justice,

Respondent-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

May 23, 2000

Before WIENER, BENAVIDES and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Rick Thaler, Warden of the Telford Unit of the Texas Department of Criminal Justice, Institutional Division ("Warden"), appeals the district court's grant of habeas corpus relief to Dobber Graham Malchi, Texas state prisoner # 675956. We reverse.

**I. FACTS AND PROCEDURAL HISTORY**

Malchi filed a petition for habeas corpus challenging a prison

1

disciplinary decision finding him guilty of possession of a box of stolen envelopes and the resulting penalty of 30-day loss of commissary privileges, 30-day cell restriction and the reduction of his good-time-earning status from S-3 (state approved trustee-3) to L-1 (line one).

The magistrate judge obtained a tape of the prison disciplinary hearing, held June 17, 1997, from which he gleaned the following facts. On June 11, 1997, Malchi, who worked at the Unit Law Library, left work at approximately 2:25 p.m. to return to his dorm. About an hour later, inmate Mark Chance, a fellow law library worker, asked petitioner to help him carry some books back from the law library. Malchi agreed and obtained a pass from the dorm officer, Nieto, for the law library where he and Chance picked up the books. As they started back to the dorm, Officers Patman and Nieto stopped them after receiving information that a box of envelopes designated for indigent inmates had been stolen from the law library. During the ensuing search, a box of envelopes was found on another inmate[1], but no contraband was found on Malchi. Malchi was then escorted to his living area and his personal items were searched. Ten envelopes for indigent inmates were discovered during the search. Officer McLilly wrote a disciplinary report charging petitioner with possession of contraband, described as "a box of indigent state envelopes."

_____

[1] The magistrate noted that the testimony did not make it clear whether the envelopes were found on Chance or some other inmate.

The evidence showed that from January 27, 1997, when he began receiving indigent inmate supplies on the Telford Unit, to June 11, 1997, Malchi received sixty-five business envelopes and mailed sixty-eight. Malchi had a surplus of three envelopes, plus the ten that were found in his cell, which he either received as contraband or, as he claimed in the disciplinary hearing, bought in the commissary during the prior six-month period. Concerning the specific envelopes that were the subject of the disciplinary charge, Malchi received ten envelopes from indigent inmate supplies on June 3, 1997 and mailed out nine envelopes between June 3, 1997 and June 11, 1997. Thus, the evidence indicates that at least one of the ten envelopes in question was legitimately in Malchi's possession. Malchi was found guilty of the charge by the Disciplinary Hearing Officer.[2]

The magistrate judge determined that the findings of the disciplinary officer were based on flawed analysis and that there were no facts that would support the finding that Malchi was found in possession of a box of stolen envelopes. The magistrate judge recommended that the habeas petition be granted and that Malchi's time-earning status and good-time credits be restored.

The Warden filed objections to the recommendation arguing that

---

[2]The Disciplinary Hearing Officer erroneously included writ envelopes in his calculations, made mathematical errors, and considered only those envelopes received and sent after March 1, 1997 in reaching the conclusion that Malchi had thirty-one unaccounted for envelopes.

the disciplinary officer had made credibility determinations that the magistrate judge was not allowed to second guess on the basis of a cold record.

The district court overruled the Warden's objections, finding that it was apparent from the face of the record that Malchi did not possess a box of envelopes, that the disciplinary decision was arbitrary and capricious and that the hearing did not meet the requirements of minimal due process. The district court granted the habeas writ and ordered the respondent to restore to Malchi his time-earning status and all lost good time resulting from the disciplinary conviction challenged in this case. The Warden filed a timely notice of appeal.

## II. ANALYSIS

### A. Controlling law and standard of review

The magistrate judge characterized Malchi's petition as arising under 28 U.S.C. § 2241. However, Malchi is alleging that the disciplinary action resulted in a change in his good-time-earning status which extended the date for his release on mandatory supervision. State prisoners who allege that they were improperly denied good-conduct credit that, if restored, would have resulted in their immediate or sooner release from prison, fall under § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); *see also McGary v. Scott*, 27 F.3d 181, 183 (5th Cir. 1994)(petition alleging the improper denial of good-time credits arose under § 2254 and was

4

subject to the Rules Governing § 2254 cases); *Story v. Collins*, 920 F.2d 1247-51 (5th Cir. 1991). Thus, Malchi's petition arises under § 2254 rather than § 2241. A certificate of appealability is not required because a representative of the state is appealing the district court's grant of habeas relief. *See* FED. R. APP. P. 22(b)(3). We review the district court's findings of fact for clear error and decide issues of law *de novo. See Clark v. Scott*, 70 F.3d 386, 388 (5th Cir. 1995).

## B. Protected Liberty Interest in Mandatory Supervision

Federal habeas relief cannot be had "absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)(internal quotations and citation omitted). Malchi's habeas action is bottomed on his claim that the reduction in his good-time-earning status imposed as a result of the prison disciplinary proceeding implicates the Due Process Clause because it delayed his release under Texas's mandatory supervision law.

Prisoners may become eligible for release under Texas law on parole or under a mandatory supervised release program. *See Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).[3] "Parole" is

---

[3]*Madison* was an appeal from the dismissal of a prisoner's 42 U.S.C. § 1983 suit, rather than a habeas opinion. Subsequent to *Madison*, this court held that a prisoner must bring a habeas action rather than a § 1983 suit to recover good-time credits lost in a disciplinary hearing. *See Clarke v. Stalder*, 154 F.3d 186, 189

the "discretionary and conditional release of an eligible prisoner . . . [who] may serve the remainder of his sentence under the supervision and control of the pardons and paroles division." *Id.* "Mandatory supervision" is the "release of an eligible prisoner . . . so that the prisoner may serve the remainder of his sentence not on parole, but under the supervision and control of the pardons and paroles division." *Id.*

Because it is entirely speculative whether a prisoner will be released on parole, the court has determined "that there is no constitutional expectancy of parole in Texas." *Id.* at 768. Therefore, any delay in Malchi's consideration for parole cannot support a constitutional claim.

In *Madison*, the court observed that former TEX. CODE CRIM. P. ANN. art. 42.18 § 8(c)(Vernon 1996) provided for a mandatory release if an inmate has acquired the necessary amount of good-time credits based on his good behavior.[4] *See id*. The court determined that the language of the Texas statute paralleled the provisions of the Nebraska statute interpreted in *Wolff v. McDonnell*, 418 U.S. 539 (1974) because both statutes bestowed mandatory sentence reductions for good behavior and allowed for a revocation of good-

---

(5th Cir. 1998). Malchi therefore properly sought habeas relief in this case.

[4]A Texas prisoner who is not on parole shall be released to mandatory supervision when his calendar time plus his accrued good-conduct time equals the maximum term to which he was sentenced. TEX. CODE CRIM. P. ANN. art. 42.18(c)(Vernon 1996).

6

time credits for misbehavior.  *See Madison*, 104 F.3d at 768.  The *Madison* court noted that *Wolff* held that the Nebraska statute created a liberty interest in the mandatory sentence reductions for prisoners.  *See id.*

*Madison* also noted that *Sandin v. Conner*, 515 U.S. 472, 481-86 (1995) did not disturb the holding in *Wolff* "that the loss of good time credits under a state statute that bestowed mandatory sentence reductions for good behavior must be accompanied by certain procedural safeguards in order to satisfy due process."  *Id.* at 769.  However, *Madison* did not directly resolve the question whether the Texas statute authorizing mandatory supervision creates a liberty interest because the record in that case did not reflect whether Madison was eligible for mandatory supervision release.[5] *See id.*  We now conclude that, pursuant to the Supreme Court's decision in *Wolff,* there is a constitutional expectancy of early release created by Texas's mandatory supervision scheme in place prior to September 1, 1996 for earned good time credits.  *See id.*

A Texas prisoner does not necessarily have a constitutional expectancy of release on a particular date.  For example, it is possible that a *de minimis* delay of a few days in a prisoner's mandatory supervision release would not give rise to a

---

[5]Some Texas inmates are not eligible for mandatory supervision release, including those who have been convicted of certain crimes. *See Madison*, 104 F.3d at 769.

constitutionally cognizable claim. In the present case, the evidence shows that the prison calculated that the subject disciplinary action delayed Malchi's release for more than six months as a result of the change of status from S-3 to L-1. We hold that such a delay is more than *de minimis.*

Texas has amended its mandatory supervision statute,[6] which provision is now codified in TEX. GOVT. CODE ANN. § 508.148-.149 (Vernon 1998). Because Malchi is serving sentences for offences committed in 1990 and 1993, prior to the effective date of the new statute, the change in the law does not apply to him and his eligibility for mandatory supervision is determined under the prior statute. *See id.* We posit no opinion concerning a constitutional expectancy of early release under Texas's revised statute.

**C. Do the Sanctions "Affect the Fact or Duration of Confinement?"**

The Warden contends that the sanctions imposed in Malchi's disciplinary proceedings do not affect the fact or duration of Malchi's sentence and for that reason do not state a claim for habeas relief. *See Preiser,* 411 U.S. at 493 (a federal habeas action is only available to challenge the fact or duration of confinement, not the conditions of confinement.). Clearly,

---

[6]The new Texas Mandatory Supervision law adds a dimension of discretion to the Mandatory Supervision scheme, providing that if a parole panel determines that the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation and the inmate's release would endanger the public, he may not be released to mandatory supervision. *See* TEX. GOVT. CODE ANN. § 508.149(b)(Vernon 1998).

Malchi's thirty-day loss of commissary privileges and cell restriction do not implicate due process concerns. *See id.*

The Warden contends that Malchi's reduction in good-time-earning status likewise does not impact the fact or duration of confinement. The Warden points out that Malchi's disciplinary sanction did not forfeit previously earned good-time credits. Rather, it reduced his good-time-earning status – that is, one day of good conduct after the disciplinary sanction was imposed earns less credit toward release at L-1 than the same conduct earns at S-3. Prison officials calculated that Malchi's projected date of release on mandatory supervision changed due to the subject disciplinary action from November 5, 2000 to May 24, 2001. The Warden argues that the affect of Malchi's time-earning class on his ultimate release date is too attenuated to invoke the procedural guarantees of the Due Process Clause, citing *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) and *Carson v. Johnson*, 112 F.3d 818, 821 (5th Cir. 1997). In *Luken*, we rejected a prisoner's claim that reduced opportunity for earning good-time credits evoked a constitutionally protected liberty interest in the context of release on parole. *See* 71 F.3d at 193 (citing *Meachum v. Fano*, 427 U.S. 215, 229 n.8 (1976)(noting that possible effect on parole decision does not create liberty interest)). Similarly, in *Carson,* we held that a prisoner has not stated a habeas corpus cause of action when he contends that an erroneous assignment to

9

administrative segregation is making him ineligible for parole. *See* 112 F.3d at 821.

The Warden's argument relies on the observation that there is a chance that Malchi may, without reference to this or any other disciplinary action, fail to earn the full measure of good-time credit available at S-3 status. Thus Malchi's projected mandatory supervision release date is speculative. Texas law provides that "[g]ood conduct time is a privilege and not a right." TEX. GOVT. CODE ANN. § 498.003(a)(Vernon 1998). Assignment to a particular time-earning status depends on a wide variety of factors, including how long an inmate has been in the Texas prison system, his disciplinary record, his participation in education and work activities and the Texas good-conduct laws in effect on his offense date. *See Texas Dept. Crim. Justice Offender Orientation Handbook,* II.D. Good Conduct Time (August 1997). For example, an inmate who is too ill to work cannot earn the maximum amount of good-conduct credit regardless of a flawless disciplinary record.

The Constitution does not guarantee good time credit for satisfactory behavior while in prison. *See Wolff,* 418 U.S. at 557. However, when a state creates a right to good time credit and recognizes that its revocation is an authorized sanction for misconduct, a prisoner's interest therein is embraced within the Fourteenth Amendment's liberty concerns so as to entitle him to those minimum procedures appropriate under the circumstances and

10

required by the due process clause to insure that this state-created right is not arbitrarily abrogated. *See id.*

On one hand, the Texas legislature specifically states that it has not created a right to good conduct time and reserves to itself the ability to assign time-earning status based on a wide variety of considerations. On the other hand, demoting a Texas prisoner to a lower time-earning status is an authorized sanction for misconduct. In *Sandin,* the Supreme Court noted that Conner's confinement in disciplinary segregation would not "inevitably" affect the duration of his sentence since the decision to release a prisoner on parole "rests on a myriad of considerations." 151 at 487. The Court concluded that the possibility that Conner's confinement in disciplinary segregation would affect when he was ultimately released from prison "is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Id.*

While Malchi's time-earning status is less attenuated from his mandatory release than release on parole, we nonetheless conclude that the timing of Malchi's release is too speculative to afford him a constitutionally cognizable claim to the "right" to a particular time-earning status, which right the Texas legislature has specifically denied creating. *See Bulger v. United States*, 65 F.3d 48, 50 (5th Cir. 1995)(holding that the loss of a prison job did not implicate the prisoner's liberty interest even though the prisoner lost the ability to automatically accrue good-time

11

credits).  We therefore conclude that the district court erred in granting Malchi habeas corpus relief.

### III. CONCLUSION

For the foregoing reasons, we reverse the district court's grant of habeas corpus relief.

REVERSED.