**REVISED - June 19, 2000**

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————————

No. 99-31200

(Summary Calendar)

———————————

THOMAS RAYMOND HENSON,

Plaintiff - Appellant,

versus

US BUREAU OF PRISONS,

Defendant - Appellee.

Appeal from the United States District Court
For the Western District of Louisiana

June 16, 2000

Before DAVIS, EMILIO M. GARZA, and DENNIS, Circuit Judges.

PER CURIAM:

Correctional officers found a tobacco pipe containing a residue which field tested positive for marijuana on federal prisoner Thomas Raymond Henson. The officers instituted disciplinary proceedings against him for possession of marijuana. Henson requested a urinalysis test, which came back negative, but the Bureau of Prisons ("BOP") denied his request to retest the pipe residue at his

own expense. After a hearing, he was found guilty and his punishment included the loss of fourteen days of good time credit.[1]

Henson filed this petition for habeas corpus relief under 28 U.S.C. § 2241 after exhausting his administrative remedies, arguing that BOP violated his due process rights when it stripped him of his good time credit without allowing him to retest the pipe residue. He now appeals the district court's denial of his petition. We review the district court's legal conclusions *de novo* and its factual findings for clear error. *See Royal v. Tombone*, 141 F.3d 596, 599 (5th Cir. 1998).

BOP does not challenge the district court's conclusion that Henson had a statutorily-created liberty interest in his good time credit. *See Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (noting that, while "[t]he Constitution does not guarantee good time credit for satisfactory behavior while in prison," "some states create such a right" through statutes creating a right to good time credit which can be revoked for misconduct). When a prisoner has a liberty interest in good time credit, revocation of such credit must comply with minimal procedural requirements. *See Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 454, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985) (noting the usual procedural requirements which must be observed—notice, an opportunity to present evidence, and written findings in support of the ruling—and stating that "some evidence" must support the ruling). These requirements are flexible, however, and must necessarily be balanced against legitimate penological interests. *See id.*; *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.").

---

[1] Henson was also stripped of thirty days of visiting time, commissary time, and telephone privileges, and he was placed in administrative segregation for fifteen days. He only challenges his loss of good time credit on appeal.

Thus, prison officials can limit the evidence a prisoner presents when they can articulate legitimate reasons for doing so. *See Ponte v. Real*, 471 U.S. 491, 495-98, 105 S. Ct. 2192, 85 L. Ed.3 (1985); *cf. Hill*, 472 U.S. at 454, 105 S. Ct. 2768 (noting that due process generally requires the "opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in [a prisoner's] defense"). These reasons include "assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation." *Hill*, 472 U.S. at 455, 105 S. Ct. 2768.

We have not previously addressed whether the denial of a drug retest during disciplinary proceedings, when the prisoner has otherwise been afforded adequate process, violates a prisoner's due process rights. Considering the parties' respective interests in this case, however, it is clear that BOP did not violate Henson's rights. BOP has a strong interest in "avoiding burdensome administrative requirements that might be susceptible to manipulation" and in "act[ing] swiftly on the basis of evidence that might be insufficient in less exigent circumstances." *Id.* at 455-56, 105 S. Ct. 2768. BOP's justifications for the test make clear that its denial was premised on these concerns. It denied Henson's retest request because he failed to identify reliability or execution problems with the first test, and because it was not even clear that sufficient residue remained in the pipe for a second test.

On the other hand, Henson identified no specific need for the retest (either by showing that the test is unreliable or that it was improperly administered) or any case law supporting a general right

to retest positive drug results.[2]  Given that there was "some evidence" supporting the punishment,[3]

*Hill*, 472 U.S. 456, 105 S. Ct. 2768, and that there would still be "some evidence" even if Henson

obtained a contradictory result from a retest, Henson had no due process right to retest the pipe.

AFFIRMED.

---

[2]    Several courts have rejected similar claims. *See Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992) (holding that a prison could deny a prisoner's request to retest a drug use test, and noting that this was justified by the burden retests would impose and by the fact that not all prisoners could afford retests); *Spence v. Farrier*, 807 F.2d 753, 755-57 (8th Cir. 1986) (rejecting a challenge to the use of drug tests without confirmatory retesting); *Hoeppner v. Iowa*, 379 N.W.2d 23, 25-26 (Iowa Ct. App. 1985) (same).

[3]    As noted, Henson was found in an area where drug use was reported, he was observed with bloodshot eyes and a flushed face, his pipe smelled of marijuana, and he admitted owning it and lending it to others.  The pipe field tested positive on the Narcotics Identification Kit ("NIK") test "E".  Henson's only challenges to the reliability or execution of this test are conclusory and unpersuasive.  He argues that the testing officer obtained two instances of false positives in prior cases, without submitting support for this assertion, and he notes that the testing officer conceded in his affidavit that, although BOP does not have formal training procedures for the test, the officer has performed the test numerous times by following the instructions provided with the test kit.  In light of the officer's affidavit indicating the frequency with which he and BOP use the test, and BOP's citation of decisions where the test was upheld as reliable, Henson's unsubstantiated challenge is unpersuasive.  *See, e.g.*, *United States v. Sanchez*, 50 C.M.R. 450, 453-55 (A.C.M.R. 1975) (allowing a NIK test and quoting literature on its reliability).
    The only evidence which arguably weighed in Henson's favor was his negative urinalysis test.  Given that he was charged with possession rather than use, however, this evidence only minimally weighed in his favor.

-4-