**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-11562

GREGORY E. AUGUST,

Petitioner - Appellant,

VERSUS

RALPH PAYNE, Warden, Federal Correctional Institute,
Big Spring, Texas

Respondent - Appellee.

Appeal from the United States District Court
For the Northern District of Texas

(1:01-CV-138)

August 7, 2002

Before JOLLY, DUHÉ and DENNIS, Circuit Judges.

PER CURIAM:[*]

This pro se petitioner appeals the district court's denial and dismissal with prejudice of his habeas corpus petition. For the reasons given below, we REVERSE and REMAND.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.    FACTS AND PROCEDURAL HISTORY

On June 7, 1999, Gregory August, a federal prisoner in the Big Spring Federal Correctional Institute, circulated a petition signed by 64 inmates and alleging that various groups of Hispanic prisoners had rioted several times in the last few months.  The petitioner also stated that the African-American prisoners were being singled out and  "systematically separated from each other" and that they were in danger because the Hispanic prisoners greatly outnumbered them.  The petition claimed that a prison official had been informed that "African-Americans would have to leave the compound . . . or be killed or injured."  The petition further stated that:

> . . . African-Americans are keenly aware of the fact the their lives are in eminent [sic] danger of attack or death and seek the government's intervention to eliminate this volatile situation, African-Americans do not want to lose their lives and do not want to be forced to take someone elses [sic] life to prevent losing there [sic] own.

According to the petitioners, "these [are] genuine issues of material facts concerning our safe confinement and request that these issues be taken seriously, before someone or numerous ones are injured or killed, because no one took these issues seriously and implimented [sic] preventive measures to maintain peace by

2

balancing the population or transfering [sic] all the African-Americans out of Big Springs [sic]."

Shortly after receipt of the petition, the Bureau of Prisons (BOP) began an investigation. On June 15, 1999, the BOP charged August with violating BOP Rules 203 (threatening another with bodily harm) and 212 (engaging in, or encouraging a group demonstration). August received notice of these charges on that day. On June 17, the Unit Discipline Committee (UDC) determined that there was not sufficient evidence to support a 203 charge and changed the charge to a Rule 299 violation (conduct which disrupts or interferes with the security or orderly running of the institution of the Bureau of Prisons (conduct most like a 212 violation)). The UDC referred the case to a Disciplinary Hearing Officer (DHO) for further proceedings. On June 17, 1999, August was given notice of the hearing before the DHO.

On August 4, 1999, a DHO held a hearing. August admitted to writing the petition and sending it to the Regional Office, but contended that he did not know that writing a petition was prohibited, did not participate in any demonstration, did not threaten anyone or force anyone to sign the petition, and did not encourage anyone to participate in a demonstration. Three witnesses were called, and all testified to signing the petition. The DHO concluded that August had committed the charged 299 violation. While acknowledging August's right to voice his concerns, the DHO stated that August did not have a right to file

3

a petition in concert with other inmates and should have followed the Administrative Remedy procedure. The DHO noted that there "was no evidence that [August] participated in a group demonstration or encouraged others to participate in a demonstration physically," but noted that August's petition sought to "'extort' from the government the balancing (racial) of the inmate population or the transfer of all African-Americans out of Big Spring." The DHO stated that the BOP had to view August's language stating that "African-Americans do not want to lose their lives and do not want to be forced to take someone else's life to prevent losing their own," as a threat to Hispanic inmates by African-Americans. The DHO noted that although August's "petition may have succeeded in settling some of [his] issues," August's use of the wrong procedure here "diverted staff's attention away from the existing problems between Hispanic inmates." Because August's conduct had "great potential to fuel riots, disturbances, assaults, and escapes" and because "[d]isruptive conduct absorbs valuable time of staff," the DHO sentenced August to loss of 13 days of good-conduct time (with 54 days taken, if available) and to 30 days' disciplinary segregation.

August appealed to the BOP Regional Director who denied relief to August because "there appears to be sufficient evidence presented to support the DHO's decision." The Regional Director noted that August's behavior had "the potential to motivate or excite other inmates to engage in misconduct," that his activity

4

placed him in a leadership position among the inmates, and that he failed to comply with the proper administrative procedure for seeking formal review of an issue relating to confinement, which requires submission of requests to the Warden.

On February 21, 2001, August filed a pro se habeas corpus petition in the district court. On the Government's motion, the district judge denied August's petition and dismissed his case with prejudice. August has timely appealed, contending that he was denied due process because he was allegedly not informed of the code sections he was charged with violating and because the BOP regulations did not provide him with fair notice that his conduct of circulating a petition was prohibited.[2]

---

[2] August also raises three other claims that are without merit. First, August claims that he was retaliated against for the exercise of his First Amendment rights. Despite August's contention, he was not punished for the exercise of his First Amendment rights. August was disciplined for circulating and signing a petition. Because the prison grievance procedure was available to August, this claim is without merit. Adams v. Gunnell, 729 F.2d 362, 367 (5th Cir. 1984). Second, August argues that he was the victim of selective prosecution because only he was prosecuted, unlike the other prisoners who signed the petition. Because August, however, does not dispute that he initiated, wrote, circulated, and mailed the petition to the prison authorities, this argument fails. United States v. Hoover, 727 F.2d 387, 389-92 (5th Cir. 1984). Finally, August contends that he was denied due process because charges were brought against him more than 24 hours after his conduct occurred, and 28 C.F.R. § 541.15(a) requires delivery to the inmate of "a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident." Because Wolff v. McDonnell, 418 U.S. 539, 564 (1974), requires only that the inmate receive written notice of the charges at least 24 hours before the hearing, not within 24 hours from the time the prison staff became aware of the incident, this claim is also without merit.

## II. ANALYSIS

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."[3] On the other hand, although a prisoner's "rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime."[4] For example, when a prisoner is granted a right to good time, the deprivation of which may result from major misconduct, he maintains an interest in his good time protected by the Fourteenth Amendment, which entitles him to limited procedural protections to protect against his right being arbitrarily abrogated.[5] This limited right to procedural due process in prison disciplinary hearings includes, among other things, "written notice of the charges . . . no less than 24 hours" prior to the hearing to be delivered to the "inmate to prepare for the appearance before the Adjustment Committee."[6]

---

[3] Wolff, 418 U.S. at 556.

[4] Id. at 555.

[5] Wolff, 418 U.S. at 556-67. See also Henson v. U. S. Bureau of Prisons, 213 F.3d 897, 898 (5th Cir. 2000). 18 U.S.C. § 3624(a) provides that "[a] prisoner *shall* be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any [good] time credited. . . ." (emphasis added). This mandatory sentence reduction as a result of good behavior indicates that once good time credit is earned, a liberty interest is created. See Madison v. Parker, 104 F.3d 765, 768-69 (5th Cir. 1997).

[6] Id. at 564.

Relying on the logic of <u>Wolff</u>, we have also found this right to include "fair warning" of proscribed conduct.[7] That is, "because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."[8] Here, it appears that August had neither "fair warning" that circulating a petition was prescribed conduct nor advanced written notice of the charges brought against

---

[7] <u>Adams v. Gunnell</u>, 729 F.2d 362, 370 (5th Cir. 1984). Despite the government's contention, <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), did not overrule <u>Adams</u>. <u>Sandin</u> involved a prison inmate who was disciplined with segregated confinement because of his abusive language and physical interference with correctional officers. Although the inmate in <u>Sandin</u> was not allowed to call witnesses in his defense, the Court found that his punishment did violate the Due Process Clause of the Fourteenth Amendment because the types of liberty interests recognized under <u>Wolff</u> are "generally limited" to "freedom from restraint" which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 483-84. "[T]he Court in <u>Sandin</u> clearly left intact its holding in <u>Wolff</u>, namely, that the loss of good time credits under a state statute that bestowed mandatory sentence reductions for good behavior must be accompanied by certain procedural safeguards in order to satisfy due process." <u>Madison</u>, 104 F.3d at 769; <u>see also</u> <u>Malchi v. Thaler</u>, 211 F.3d 953, 957 (5th Cir. 2000). In <u>Adams</u>, we merely relied on <u>Wolff</u> to find that "fair notice" is one of the due process procedural protections afforded to inmates faced with the loss of good time credits under a state statute. <u>Adams</u>, 729 F.2d at 370 ("[B]asic due process was violated by the eventual imposition of severe punishment for conduct no inmate could have known was against prison rules."). In short, because <u>Sandin</u> did not overrule <u>Wolff</u>, <u>Adams</u> remains intact. In light of the restrictive nature of <u>Sandin</u>, however, August's disciplinary segregation no longer presents a constitutional claim. <u>Pichardo v. Kinker</u>, 73 F.3d 612, 612-23 (5th Cir. 1996); <u>Luken v. Scott</u>, 71 F.3d 192, 193 (5th Cir. 1995).

[8] <u>Adams</u>, 729 F.2d at 368-69 (citing <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108 (1972)).

7

him prior to his hearing.

A. Fair Warning

In Adams v. Gunnell, we encountered an almost identical situation as exists here, i.e., a prisoner being punished for circulating a petition under a general "disruptive conduct" statute,[9] and we find that case to be instructive in resolving this dispute. In Adams, 36 African-American inmates signed a "gentle" petition alleging that African-American inmates were not given the same opportunity to participate in the same programs as white prisoners at the prison.[10] Two inmates were charged with having "signed an illegal petition" in violation of Prison Rule 399, which prohibited "conduct which disrupts the orderly running of the Institution."[11] The disciplinary committee found that both inmates had violated the rules and sanctioned them with loss of good time and administrative segregation.[12] Because there was nothing in the prison regulations or in the petition itself to suggest that such conduct was prohibited, this court found that the prison's "catch-all" disruptive-conduct provision violated "basic due process . . . by the eventual imposition of severe punishment for conduct no

---

[9] Id.

[10] Id. at 362-64.

[11] Id. at 362.

[12] Id. at 365.

inmate could have known was against prison rules."[13]

Like the court in <u>Adams</u>, we are not called upon to determine whether Rule 299 is unconstitutionally vague.[14]  Instead, we "must consider whether the catch-all rule is impermissibly vague as applied to the conduct of th[is] plaintiff[] – that is, whether [he] had fair warning that [his] conduct was proscribed."[15]  Here, the BOP's code of violations contains no explicit prohibition on the circulation of petitions.[16]  Similarly, the Administrative Remedy procedure does not prohibit multi-prisoner petitions.[17] Nothing in any of the administrative decisions in August's case indicates that there is a specific prohibition on petitions at Big Spring, or that prisoners have previously been punished for circulating petitions.  Although both the government in its brief and the UDC at the hearing have classified August's petition as "threatening" and "incendiary," August's petition is devoid of obscene or inflammatory language, as is evidenced by the UDC's decision to drop the Rule 203 charge against August for threatening another with bodily harm.  In fact, the petition indicated that

---

[13] <u>Id.</u> at 370.

[14] <u>Id.</u>

[15] <u>Id.</u>

[16] <u>See</u> 28 C.F.R. § 541.13, Table 3.  We do not suggest, however, that the prison does not have the authority to establish a rule prohibiting inmates from drafting or circulating petitions.

[17] <u>See</u> 28 C.F.R. §§ 542.10-542.14.

9

"African-Americans do <u>not</u> want to lose their lives and do <u>not</u> want to be forced to take someone elses [sic] life to prevent losing their own." (emphasis added). Moreover, there is no indication that the circulation of the petition in this case had any disruptive effect on the operation of the prison. The record reveals no circumstances that might have given August notice that drafting, circulating, and signing of this petition containing nonthreatening language was prohibited and could subject him to punishment.[18] Although federal courts ordinarily defer to prison authorities' interpretation of rules, "fair notice of a rule against petitions was quite clearly lacking at [Big Spring] – there is simply no such rule."[19]

### B. Advanced Notice

August also claims that he was denied due process because although he received notice of the original charges against him for violations of Rules 203 and 212 for threatening bodily harm and encouraging a group demonstration, he did not receive any notice of the 299 charge for conduct which disrupts the orderly running of the institution. August contends that his first knowledge of this new charge was at the DHO hearing held on August 4, 1999.

The record indicates that the incident report, which listed

---

[18] <u>See</u> <u>Adams</u>, 729 F.2d at 369.

[19] <u>Id.</u> at 369.

10

and described only the 203 and 212 charges, was completed and delivered to August on June 15, 1999.  On June 17, 1999, the UDC evaluated the charge, took a statement from August, and referred the issue to the DHO.  At that time, the UDC modified the charges because "there [wa]s no evidence to support the 203 & the incident should be a 299, most like 212."  There is nothing in the record to suggest that August was given a written copy of the "Committee Action" form changing the charges.  Although August did, on June 17, 1999, at 3:00 p.m., receive notice of the hearing before the DHO,[20] it is unclear whether this notice constituted verbal notification or an actual written copy of the UDC "Notice of Hearing" form.  Assuming, *arguendo*, that August received a written copy of the UDC form, this form does not reflect the amended charges and indicates that August is alleged to have "threaten[ed] bodily harm/encourag[ed] group demonstration" in violation of code sections 203 and 212.  In fact, the DHO Report indicates that the only written notice that August received of the charges filed against him was on June 15, 1999 -- two days before the modification and addition of the 299 charge.  In short, based on the evidence before us, we cannot say that August received the constitutionally required written notice of the charges brought against him no less than 24 hours prior to his hearing.[21]

---

[20] August also received an advisement of rights form at this time.

[21] Wolff, 418 U.S. at 564.

11

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED, and this case is REMANDED for proceedings consistent with this opinion.