NO. 07-10-00308-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

AUGUST 18, 2011

ROY JON, APPELLANT

v.

LESLEY DINWIDDIE, ET AL.
APPELLEES

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2009-546,985; HONORABLE RUBEN REYES, JUDGE

Before CAMPBELL and HANCOCK, JJ. and BOYD, S.J.[1]

**MEMORANDUM OPINION**

Appellant, Roy Jon, an inmate proceeding pro se sued ten individual defendants and both the Texas Department of Criminal Justice (TDCJ) and the University of Texas Medical Branch (UTMB), alleging a host of claims ranging from assault to use of prison "food loaf" as cruel and unusual punishment. Jon alleged that these various acts and omissions violated a number of his constitutional and statutory rights. On the

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

defendants' motion, the trial court dismissed Jon's claims as frivolous. We will affirm the trial court's dismissal.

Factual and Procedural History

Jon alleges that, on October 26, 2008, prison officials at the Montford Unit performed a "shakedown" during which an officer acted aggressively toward Jon and destroyed some of his personal property. Jon claims that he was sent to a solitary cell for no reason during the search. After the search, what remained of Jon's property was returned to him, and Jon was moved to another cell.

Jon announced he was on a hunger strike on October 28, during or after the prison went into lockdown and a second search of the prison cells was performed. Prison staff ordered Jon to carry his property to the gym. Jon maintained that he could not do so because he was ill after haven taken his medication without food and insisted that the staff provide him a cart. The staff refused. Lesley Dinwiddie arrived in response to the disagreement and Jon again expressed that he wanted a cart to carry his property to the gym. According to Jon, Dinwiddie responded by slamming Jon against a wall and placing him in restraints.

Defendant Zulfiquar Hussain then joined in to assist Dinwiddie, and Jon was placed in another cell. In his petition, Jon advances an undeveloped assertion that Hussain, perhaps with the assistance of other unnamed staff members, committed

2

theft.[2]  The TDCJ, he claims, was aware of this incident and permitted the staff's "negligent use of security devices and premises."

As a result of Jon's conduct during the search, disciplinary action was taken against him.  Jon claims that he was denied procedural and substantive due process during the disciplinary proceeding by Richard Wathen, Terry Tucker, Joel Guana, and the TDCJ.  As a result of the disciplinary procedure, Jon was placed on twenty-five days of commissary and cell restriction.  Following the alleged instances of mistreatment during the lockdown, Jon claims, defendants Allen Hanretta and Wendy Heckler were deliberately indifferent to Jon's suffering at the hands of prison staff and refused to provide him with necessary medical care.

Jon also complains of a later incident involving a food tray that, he says, was placed in the proper location for it to be picked up following a meal.  Defendant Jeremy Boggs apparently wanted Jon to move it elsewhere and, when Jon refused, kicked the tray into the cell and came within five inches of hitting Jon.  By Jon's account, this close call caused him mental anguish.  Jon claims that, by kicking the tray in Jon's direction, Boggs violated Jon's protection against cruel and unusual punishment and that the TDCJ knew of Boggs's behavior and failed to maintain adequate surveillance and inspection that would prevent Boggs from negligently using the food tray as a weapon.

---

[2] Though done without a great deal of development, Jon claimed in his petition that Hussain took some of Jon's personal property.  On appeal, Jon mentions the theft of personal property but does not appear to advance an independent argument regarding the viability of his claim of theft, if any, in relation to the trial court's dismissal.

Jon refused to return the kicked tray to prison staff when requested. He demanded that a supervisor come down to get the tray so that Jon could report that Boggs kicked the tray into his cell. As a result of Jon's refusal to comply with an order to bring the food tray to the proper location, he was put on "food loaf." Jon claims that "food loaf" was imposed without supervisor or warden approval and that such imposition by defendants Joshua Keeney, Frank Renduf, Guana, Wathen, and Tucker caused him mental and physical anguish and was retaliatory in nature. He maintains that having to eat "food loaf" for twenty-one meals is cruel and unusual punishment. The TDCJ, Jon claims, knew of and approved this negligent use of "food loaf."

Based on these assertions, Jon sued ten individual defendants, the TDCJ, and UTMB for a variety of statutory and constitutional violations. The State responded by filing a motion to declare Jon a vexatious litigant and a motion to dismiss his suit pursuant to Chapter 14 of the Texas Civil Practice and Remedies Code. The trial court denied defendants' motion to declare Jon a vexatious litigant but granted their motion to dismiss Jon's suit as frivolous pursuant to Chapter 14.

Jon appealed the dismissal and, in a forty-six page handwritten brief, brings eleven issues for this Court's review. Through ten of his issues, he reasserts the factual and legal bases of his various claims against defendants. The underlying contention of Jon's issues is that the trial court erroneously dismissed his lawsuit. In his final issue, he also complains of error in the discovery process.

4

Applicable Law and Standard of Review

Chapter 14 of the Texas Civil Practice and Remedies Code applies to an inmate's suit in which an affidavit or unsworn declaration of inability to pay costs is filed by the inmate. See TEX. CIV. PRAC. & REM. CODE ANN. § 14.002 (West 2002). Among the several grounds on which a trial court may dismiss such a suit is the finding that the inmate's suit is frivolous or malicious. See id. § 14.003(a)(2) (West 2002). In determining whether a claim is frivolous or malicious, the trial court may consider whether (1) the claim's realistic chance of ultimate success is slight, (2) the claim has no arguable basis in law or in fact, (3) it is clear that the party cannot prove facts in support of the claim, or (4) the claim is substantially similar to a previous claim filed by the inmate because the claim arises from the same operative facts. Id. § 14.003(b).

We review a trial court's dismissal of a lawsuit brought by an inmate who had filed an affidavit or declaration of inability to pay costs for an abuse of discretion. In re Douglas, 333 S.W.3d 273, 293 (Tex.App.—Houston [1st Dist.] 2010, pet. denied). Under this standard of review, the appellant inmate must show that the trial court's action was arbitrary or unreasonable in light of all the circumstances in the case. Id. While, generally, we review dismissals of inmate litigation under Chapter 14 for an abuse of discretion, we review de novo the specific question whether there was an arguable basis in law for an inmate's claims. Id. To determine whether the trial court properly concluded that there was no arguable basis in law for an inmate's suit subject to Chapter 14, we must examine the types of relief and causes of action the inmate

pleaded in his petition to determine whether, as a matter of law, the petition stated a cause of action that would authorize relief.  Id.

Analysis

Claim of Assault

Jon claims that, in response to Jon's medical complaints during the second search, Dinwiddie used excessive force in such a manner and degree as to constitute an assault.[3]  To put Jon's contention in its appropriate context, we note that the facility was in lockdown, and Jon admitted that he refused to obey the staff's orders to carry his property to the gym that day, though he maintains that he was physically unable to do so as a result of his illness.  In light of the evidence, Jon's refusal to obey an order during lockdown invokes security considerations associated with the privileged use of force in a correctional facility:

> An officer or employee of a correctional facility is justified in using force against a person in custody when and to the degree the officer or employee reasonably believes the force is necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security.

TEX. PENAL CODE ANN. § 9.53 (West 2011).

Dinwiddie's written statement concerning the incident cited Jon's refusal to leave the open cell for the required search as the basis for the decision to place Jon in restraints.  Dinwiddie denied slamming Jon against a wall, squeezing his neck, or

---

[3] For the purposes of our analysis and due to the unclear nature of Jon's claims against the ten individual defendants, we set aside any considerations regarding immunity as it applies to the individual defendants.

6

twisting his arm and, instead, explained that Jon eventually did comply with his orders to turn around and face the wall. Two correctional officers who witnessed the incident described the incident similarly.

Jon complains that, as a result of the alleged assault by Dinwiddie, he suffered shoulder and back injuries, neck strain, and migraines. We note that medical records that Jon provides do not support his contentions that he sustained injuries as a result of his encounter with Dinwiddie. Medical records pre-dating the incident at issue show that Jon complained of shoulder pain in early October and was treated for that condition. Also inconsistent with Jon's account, nurses' notes taken during a visit a few days after the encounter with Dinwiddie demonstrate that Jon complained that his back pain was a result of force used against him two years earlier and that his back had been hurting since he had to carry his property to the gym during lockdown. The attending nurse reported that there was no redness or swelling and that Jon had full range of motion. There was no mention of Jon's reports of migraines or neck strain.

In the factual context, the trial court could have concluded that it was reasonable to place Jon in restraints. Nothing, other than Jon's assertions that conflict with other accounts and evidence, suggest that Dinwiddie used force beyond that which was reasonable under the circumstances. Further, there is no evidence that Jon sustained injuries as a result of his interaction with Dinwiddie on that day. Based on the state of the record, the trial court would have been within its discretion to have found that Jon's chances of overcoming Dinwiddie's Section 9.53 privilege to use reasonable force on these facts is but slight. Alternatively, the trial court could have found that it was clear

that Jon cannot prove facts to support his claim that Dinwiddie assaulted him as alleged.[4] We overrule appellant's contentions related to an assault by Dinwiddie.

Claims Related to Disciplinary Action

On appeal, Jon maintains that he was denied procedural and substantive due process during the 2008 disciplinary action related to Jon's conduct during the second search. After sorting through and reading the numerous grievances in appendices and in the record, most of which are unrelated to Jon's encounter with Dinwiddie, it has become clear that Jon utilizes the grievance system with startling regularity, often filing grievances that overlap in time and topic. Though it does appear that Jon complains on appeal of the disciplinary case related to the encounter with Dinwiddie, his petition identified the case at issue as disciplinary case number 20090131298, which relates to the food tray incident and as a result of which he was placed on food loaf. On appeal, Jon identifies the case at issue as disciplinary case 20090058995, which, according to his allegations, related to the Dinwiddie encounter and for which he was placed on commissary and cell restriction for twenty-five days. Regardless of which case the trial court understood to be at issue, it would have been correct to conclude that either punishment—food loaf or commissary and cell restriction—does not raise due process concerns because such punishments are simply changes in the conditions of Jon's confinement.

---

[4] Further, though the trial court could not have concluded that Jon's claims had no arguable basis *in fact* if it had not held a hearing, see Hector v. Thaler, 862 S.W.2d 176, 178 (Tex.App.—Houston [1st Dist.] 1993, writ denied), we cannot say that the trial court was so constrained after having held a hearing in which Jon participated by telephone.

8

The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner. Sandin v. Conner, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed. 2d 418 (1995). A prisoner's liberty interest is limited to freedoms from restraint which impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life. Id. at 484. Specifically, cell restrictions and loss of commissary privileges are merely changes in the conditions of an inmate's confinement and do not implicate due process concerns. Hamilton v. Williams, 298 S.W.3d 334, 341 (Tex.App.—Fort Worth 2009, pet. denied) (citing Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000), and Madison v. Parker, 104 F.3d 765, 767–68 (5th Cir. 1997)).

Here, the trial court could have concluded that the punishment at issue did not represent an "atypical and significant hardship[]" and that, therefore, Jon's claims relating to due process in his disciplinary hearing had no basis in law. See Sandin, 515 U.S. at 484. We overrule Jon's contentions on this issue.

Claims of Cruel and Unusual Punishment

It appears that Jon claims that he was subject to cruel and unusual punishment in violation of the Eighth Amendment when (1) he was forced to eat food loaf as a disciplinary measure, (2) he was denied medical care, and (3) he was nearly hit by the tray a staff member kicked in his direction. See U.S. CONST. amend. VIII.

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 296, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). That is to say, the treatment a prisoner receives

9

and the conditions in which he is confined are subject to scrutiny under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). As part of the Eighth Amendment protection, prison officials are required to provide humane conditions of confinement by ensuring that inmates receive the basic necessities of adequate food, clothing, shelter, medical care, and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

An Eighth Amendment violation exists where the deprivation of even a single identifiable human need, such as food, warmth, or exercise, is caused by prison officials' wanton disregard for the prisoner's welfare. See Wilson, 501 U.S. at 304. However, not every deprivation is an Eighth Amendment violation. To establish an Eighth Amendment violation regarding conditions of confinement, an inmate must satisfy two requirements. First, the deprivation alleged must be, objectively, sufficiently serious, and, secondly, a prison official must have been deliberately indifferent to inmate health or safety. See Farmer, 511 U.S. at 834.

"Food Loaf"

Jon asserts that defendants Keeney, Renduf, Tucker, Guana, and Wathen used "food loaf" in such a way as to constitute cruel and unusual punishment under the Eighth Amendment. However, Jon's claims regarding the "food loaf" do not rise to the level of an Eighth Amendment violation. Other than his expression of distaste or dissatisfaction with the "food loaf," Jon presents no evidence or argument that he suffered a physical or mental injury or developed a physical or mental condition as a result of having to eat "food loaf" for a week. He does not point to evidence that the

10

"food loaf" was so nutritionally inadequate or served in a condition that it would constitute a deprivation of a human need. The record shows that "food loaf" was served in response to Jon's reported conduct in the food tray incident. That being so, we cannot say that the "food loaf" was anything more than a "routine discomfort inherent in the prison environment." See 'Umar v. Price, No. 09-00-00031-CV, 2001 Tex. App. LEXIS 2232, at *12 (Tex.App.—Beaumont Apr. 5, 2001, no pet.) (not designated for publication).

The trial court could have reasonably concluded that Jon failed to satisfy the first requirement of an Eighth Amendment violation that there be a sufficiently serious deprivation of an identifiable human need. We overrule Jon's contentions regarding cruel and unusual punishment in the form of "food loaf."

Medical Needs

Despite the presence of a number of medical records noting Jon's complaints about the incident but finding no notable injury, it would appear that, two months after the incident, Jon filed a grievance alleging that he was being denied proper medical attention for physical and mental injuries related to the incident. Still setting aside any considerations that the defendants against whom Jon makes these claims would enjoy immunity, we note that the record suggests that appellant received a number of visits from the prison's medical staff over the days at issue.

Ultimately, it would seem, appellant was unhappy with the medical treatment he received. However, disagreement or dissatisfaction with medical treatment received is not sufficient to serve as "deliberate indifference" such that the disregard of Jon's

medical needs would violate the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104–06, 97 S.Ct. 285 50 L.Ed.2d 251 (1976). Even assuming that Hanretta and Heckler were negligent, a finding which we do not make here, mere negligence is insufficient to establish the deliberate indifference required for an Eighth Amendment violation. See id. at 106.

The trial court could have reasonably concluded that Jon cannot prove facts to support his claim that Hanretta and Heckler acted with deliberate indifference to Jon's serious medical needs such that their medical treatment would amount to a violation of the Eighth Amendment. We overrule Jon's contentions of deliberate indifference on the part of Hanretta and Heckler.

Kicked Tray

Jon claims that Boggs used excessive force against him when Boggs kicked the tray inside Jon's cell in Jon's direction. Jon characterizes this action as conduct subjecting Jon to cruel and unusual punishment. Jon made clear to the trial court, both in his petition and at the hearing on the motion to dismiss, that the tray did not hit him.

Whenever prison officials are accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is "whether [the] force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam) (citing Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L. Ed. 2d 156 (1992)). Although lack of an injury does not always defeat an excessive force claim, it is relevant

12

in determining whether a violation occurred.  Id. at 1177–78.  The extent of injury may also provide some indication of the amount of force applied.  Id. at 1178.

Based on cases dealing with excessive force in the Eighth Amendment context, including Wilkins, the trial court could have concluded that, even if Boggs did kick the tray in Jon's direction, such action was not objectively of such a serious nature that it could be said to be done to "maliciously and sadistically cause harm."  That is, the trial court could have concluded, within its discretion, that the chance of this claim's success was slight or that Jon would be unable to prove facts to support his claim.  We overrule Jon's contentions relating to this issue.

Claims against TDCJ and UTMB

In the absence of a relevant waiver of immunity, these two entities, as units of the State, enjoy sovereign immunity.  Jon's claims that the TDCJ negligently used tangible personal property in the forms of restraints and "food loaf" does not invoke an applicable waiver of the TDCJ's sovereign immunity.  See TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (West 2011).  Though Jon's petition attempts to couch allegations against TDCJ in terms of negligence, a careful reading reveals that his allegations more accurately sound in intentional tort.  And the Texas Tort Claims Act (TTCA) specifically provides that the negligent use of property exception does not apply when a party claims intentional tort.  See id. § 101.057(2) (West 2011).  Jon's attempts to cast his

claims in terms of negligence fail; the true nature of his claims more closely resembles allegations of intentional misconduct.[5]

That said, there does not appear to be a waiver of immunity applicable to Jon's claims such that the TDCJ would be subject to suit. Therefore, looking at Jon's claims against the TDCJ, the trial court could have reasonably concluded their "realistic chance of ultimate success is slight." See id. § 14.003(b)(1). We overrule Jon's contentions to the contrary.

The record shows that Jon's claims against UTMB would likewise fail in that it appears the TTCA does not provide an applicable waiver by which Jon could successfully pursue his claims against UTMB. From our reading of Jon's contentions, it appears he contends that UTMB knew of and approved the alteration of his medical records. He attempts to characterize this practice as negligent use of medical records.[6] His own contentions, however, belie his efforts to characterize this matter as negligence. He unequivocally accuses prison staff and TDCJ of knowingly altering records in furtherance of efforts to cover up an assault by Dinwiddie. It is well established that, if a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is

_____

[5] That is, the nature of the complained-of conduct sounds more accurately in intentional tort if we assume the conduct would constitute anything at all more than a reasonable use of force in a correctional facility. See TEX. PENAL CODE ANN. § 9.53.

[6] We would add that information is not considered tangible personal property, since it is an abstract concept that lacks corporeal, physical, or palpable qualities. State Dep't of Pub. Safety v. Petta, 44 S.W.3d 575, 580 (Tex. 2001). And simply reducing information to writing on paper does not make the information "tangible personal property" for the purposes of the TTCA. Id. (citing Dallas County v. Harper, 913 S.W.2d 207, 207–08 (Tex. 1995)).

14

barred by the TTCA. <u>See</u> <u>Petta</u>, 44 S.W.3d at 580; <u>Pineda v. City of Houston</u>, 175 S.W.3d 276, 282–83 (Tex.App.—Houston [1st Dist.] 2004, no pet.). The trial court did not abuse its discretion by dismissing claims against UTMB as frivolous.

<u>Complaints Regarding Discovery</u>

On appeal, Jon urges that the trial court committed error in some manner associated with the discovery process. But he does not identify an adverse ruling on which he bases his complaint. That being so, there is nothing preserved for our review. <u>See</u> TEX. R. APP. P. 33.1(a)(2).

## Conclusion

Having overruled appellant's points of error, we affirm the trial court's judgment.

Mackey K. Hancock
Justice

15